CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 27 2012

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SUSAN C. DURHAM, | ) | CASE NO. 4:11CV00023 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's May 9, 2007 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq. is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

In a decision issued on March 26, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, April 29, 2007, and that she met the insured status requirements under the Act only through September 30, 2007[1]. (R. 14.) The Law Judge determined plaintiff suffered the

---

[1] In order to qualify for disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, September 30, 2007. See 20 C.F.R. § 404.131(a).

following severe impairments: fibromyalgia, obesity, degenerative disc disease (mild), chronic obstructive pulmonary disease, osteoarthritis, and depression and anxiety. (*Id.*) The Law Judge did not believe plaintiff had an impairment or combination of impairments which met or medically equaled a listed impairment. (R. 24.) The Law Judge found that she maintained the residual functional capacity ("RFC") to perform a limited range of sedentary work requiring lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, standing and/or walking at least two to four hours in an eight-hour workday, sitting about six hours in an eight-hour workday, occasionally performing postural activities including climbing ramps/stairs balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders/ropes/scaffolds, and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, and working in hazardous conditions including moving machinery and at heights. (R. 25.) Additionally, plaintiff was found to suffer moderate limitations in her abilities to understand, remember and complete detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*) Plaintiff was further found to have no significant limitations in the abilities to remember locations and work-like procedures, understand, remember and complete very short and simple instructions, sustain an ordinary routine without special supervision, make

2

simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (*Id.*) The Law Judge determined that this RFC precluded plaintiff from performing her past relevant work, but that other jobs existed in substantial numbers in the national economy that she could perform. (R. 30-31.) Ultimately, the Law Judge found plaintiff was not disabled under the Act. (R. 32.)

Plaintiff appealed the Law Judge's March 26, 2010 decision to the Appeals Council. (R. 1-3.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

3

Plaintiff has filed a *pro se* brief which the undersigned has construed as a motion for summary judgment and brief in support thereof. While plaintiff makes numerous assertions, it is difficult to discern the precise arguments she wishes the court to address. The undersigned has closely examined the record and will assess whether the Law Judge's decision is supported by substantial evidence at each step in the sequential evaluation.

At step one in the sequential evaluation, the Law Judge found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, April 29, 2007. (R. 14.) The Law Judge determined plaintiff's fibromyalgia, obesity, degenerative disc disease (mild), chronic obstructive pulmonary disease, osteoarthritis, and depression and anxiety were severe impairments at step two in the sequential evaluation.[2] (*Id.*) The Law Judge's findings at these two steps were favorable to the plaintiff and are not in dispute. Moreover, they are supported by substantial evidence.

At step three in the sequential evaluation, the Law Judge found that plaintiff did not have an impairment or combination of impairments which met or medically equaled a listed impairment. (R. 24.) A claimant bears the burden of proving that her impairments, alone or in combination, meet or equal a listed impairment. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987) (noting the claimant has the burden of showing that he or she has a medically severe impairment or combination of impairments and that the Act requires them to furnish medical

---

[2] A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

4

evidence regarding their condition). The Law Judge's finding that plaintiff failed to meet her burden of establishing a listed impairment is supported by substantial evidence.

The Law Judge specifically concluded that plaintiff's mental impairments did not meet or medically equal Listings 12.04[3], 12.06[4], or 12.08[5]. (R. 24.) The medical record failed to

---

[3] 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[4] Listing 12.06 provides:
In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
A. Medically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning; Or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; And
B. Resulting in at least two of the following:

Case 4:11-cv-00023-JLK-BWC   Document 20   Filed 01/27/12   Page 6 of 13   Pageid#: 536

disclose evidence to support a finding that plaintiff's mental impairments were severe enough to meet or equal a listing. In addition, State agency mental health expert Richard J. Milan, Jr., Ph.D. evaluated plaintiff's medical records and concluded that her mental impairments did not meet or equal a listing. (R. 337-350.) Howard S. Leizer, Ph.D., another State agency mental health expert who evaluated plaintiff's medical records, also found that her mental impairments were not sufficiently severe enough to meet or equal a listing. (R. 406-419.)

---

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.
Or
C. Resulting in complete inability to function independently outside the area of one's home.

[5] Listing 12.08 provides: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
1. Seclusiveness or autistic thinking; or
2. Pathologically inappropriate suspiciousness or hostility; or
3. Oddities of thought, perception, speech and behavior; or
4. Persistent disturbances of mood or affect; or
5. Pathological dependence, passivity, or aggressivity; or

6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;

And

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

7

Turning to the next step in the sequential evaluation, the Law Judge found that plaintiff retained the RFC to perform a limited range of sedentary work requiring lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, standing and/or walking at least two to four hours in an eight-hour workday, sitting about six hours in an eight-hour workday, occasionally performing postural activities including climbing ramps/stairs balancing, stooping, kneeling, crouching, and crawling but never climbing ladders/ropes/scaffolds, and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, and working in hazardous conditions including moving machinery and at heights. (R. 25.) Additionally, she was found to have moderate limitations in the abilities to understand, remember and complete detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*) Plaintiff was found to have no significant limitations in the abilities to remember locations and work-like procedures, understand, remember and complete very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of

normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (*Id.*)

The Law Judge's RFC finding is supported by the opinions offered by consultative psychological examiner Annemarie Carroll, Ph.D. Dr. Carroll noted that, although plaintiff had no history of psychiatric hospitalizations, she had been receiving psychotherapy services for about three years. (R. 329.) The psychologist diagnosed plaintiff as suffering the following: pain disorder associated with both psychological factors and a general medical condition; major depressive disorder, recurrent, moderate; and alcohol dependence in sustained full remission. (R. 331.) Dr. Carroll concluded that plaintiff was functioning with a global assessment of functioning ("GAF") of 50.[6] (*Id.*) The psychologist found that plaintiff could follow simple commands and had the cognitive ability to learn more complex, job-related tasks. (*Id.*) Dr. Carroll noted that plaintiff engaged in social avoidance and isolation which might make it difficult for her to perform in a position which requires a lot of interaction with the general public, and that her thoughts, speech, and frequent pain behaviors were likely to impair her ability to develop new relationships with coworkers and supervisors. (*Id.*) The psychologist opined plaintiff was likely to have difficulty maintaining regular work attendance and managing the stress of full-time employment. (*Id.*)

The RFC finding is further supported by the findings offered by Dr. Milan, a psychologist who evaluated plaintiff's medical records on November 8, 2007. (R. 334-336.) Dr. Milan opined that plaintiff could understand, retain, and follow simple job instructions and is able to

---

[6] GAF ratings are subjective determinations based on a scale of zero to one hundred of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders 32 (4th ed. 2000) ("DSM–IV Manual"). A GAF of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.) *Id.* at 34.

maintain concentration and attention for extended periods of time. (R. 336.) The psychologist believed plaintiff would be able to maintain regular work attendance and be punctual, and that she would not require special supervision in order to sustain a work routine. (*Id.*) Dr. Milan opined that plaintiff could be expected to complete a normal workday and workweek without exacerbation of psychological symptoms and is able to maintain socially appropriate behavior and perform the personal care functions needed to maintain an acceptable level of personal hygiene. (*Id.*) The psychologist further opined that plaintiff was capable of asking simple questions and accepting instruction and was capable of maintaining personal safety and adjusting to changes in a work setting. (*Id.*) Most significantly, Dr. Milan opined that she was able to meet the basic mental demands of competitive work on a sustained basis, despite the limitations resulting from her impairments. (*Id.*)

Dr. Leizer, a psychologist, evaluated plaintiff's medical records on June 17, 2008, and he opined that she suffered with major depressive and pain disorders. (R. 422.) Dr. Leizer noted that plaintiff had not been hospitalized as a result of her mental impairments, and that there was minimal evidence of mental health treatment. (*Id.*) The psychologist believed that plaintiff could understand, retain, and follow simple job instructions and maintain concentration and attention for extended periods of time. (*Id.*) He did not believe plaintiff would need special supervision in order to sustain a work routine, and that she could be expected to complete a normal workday and workweek without exacerbation of psychological symptoms. (*Id.*) Dr. Leizer opined that plaintiff was able to maintain socially appropriate behavior and perform the personal care functions needed to maintain an acceptable level of personal hygiene. (*Id.*) He further opined that plaintiff was capable of asking simple questions and accepting instruction and

10

could maintain personal safety and adjust to changes in work setting. (*Id.*) Ultimately, Dr. Leizer concluded that plaintiff was able to meet the basic mental demands of competitive work on a sustained basis, despite any limitations resulting from her impairments. (*Id.*)

The Law Judge's RFC finding is also supported by the findings from consultative examiner Mark Stowe, M.D., a physician with the Virginia Department of Rehabilitative Services. (R. 352-355.) Dr. Stowe examined plaintiff in November 2007 and diagnosed her as suffering with COPD, fibromyalgia, neck and back pain, osteoarthritis in the knees, and hypothyroidism. (R. 354.) Dr. Stowe concluded that plaintiff did not give her best effort during his examination, and that a number of her symptoms were dramatized. (R. 355.) In assessing her functional capacity, the physician opined that plaintiff could sit for an eight-hour day with normal breaks, could stand and walk for four hours with normal breaks without assistance devices, and could lift and carry ten pounds frequently and twenty or fifty pounds never. (*Id.*) He further opined that plaintiff could bend, stoop and crouch occasionally, and that she would have no manipulative limitations with handling, feeling, grasping or fingering. (*Id.*) On the other hand, Dr. Stowe, however, believed plaintiff would have environmental "limitations secondary to height." (*Id.*)

The Law Judge's finding that plaintiff could perform a range of sedentary work is also supported by assessments offered by the State agency record reviewing physicians. Frank M. Johnson. M.D. opined that plaintiff could lift and/or carry (including upward pulling) twenty pounds occasionally and lift and/or carry (including upward pulling) ten pounds frequently. (R. 370.) The physician further opined that plaintiff could stand and/or walk (with normal breaks) for a total of four hours in an eight-hour workday and sit (with normal breaks) for a total of about

11

six hours in an eight-hour workday. (*Id.*) Dr. Johnson found that plaintiff's ability to push and/or pull (including the operation of hand foot controls) was unlimited, other than any limits she had on her ability to lift and/or carry, and that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. (R. 370-371.) The physician further found that plaintiff had no manipulative, visual, or communicative limitations. (R. 371-372.)

Joseph Duckwall, M.D., another State agency record reviewing physician, evaluated plaintiff's medical records and opined that plaintiff could occasionally lift and/or carry (including upward pulling) twenty pounds and frequently lift and/or carry (including upward pulling) ten pounds. (R. 398.) The physician further opined that plaintiff could stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. (*Id.*) He found that plaintiff's ability to push and/or pull (including the operation of hand foot controls) was unlimited, other than any limits she had on her ability to lift and/or carry. (*Id.*) Dr. Duckwall determined that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and that she suffered no manipulative, visual, or communicative limitations. (R. 399-400.)

At step four, the Law Judge concluded that plaintiff's RFC precluded her from performing her past relevant work as a table busser, cabinet room worker in a furniture factory, cashier/cook in a restaurant, cashier/stocker in a department store, knitter in a hosiery mill, and stocker in a grocery store and in a department store. (R. 30-31.) The Law Judge's finding at this step was favorable to the plaintiff. Moreover, this finding is supported by substantial evidence.

At the final step in the sequential evaluation, the Law Judge found that there were other jobs available in the national economy that plaintiff could perform. (R. 31.) Based on evidence

12

provided by a vocational expert ("VE") who was present at the hearing, the Law Judge found that plaintiff could work as a telephone operator, order clerk, telemarketer, all jobs which are available in the national economy. (R. 32, 92-93.) The undersigned is of the view that the testimony of the VE accounted for all relevant substantial evidence, and that the Law Judge's decision to accept the testimony of the VE is supported by substantial evidence.

Having determined that the Law Judge's findings at each step of the sequential evaluation are supported by substantial evidence, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record and mail a copy to the plaintiff.

ENTERED: /s/ [signature]
U.S. Magistrate Judge

1-27-2012
Date